UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SIMON RENE GARCIA, TDCJ No. 01953699, | § § § | |
| Petitioner, | § § | |
| v. | § | Civil No. SA-17-CA-01078-XR |
| | § | |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner Simon Rene Garcia's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support (ECF No. 7), and Respondent's Amended Answer (ECF No. 15).[1] Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**Procedural History**

The facts of Petitioner's offense were accurately summarized by the Fourth Court of Appeals on direct appeal:

> This case stems from the murder of Samuel Wass on March 26, 2012. [Petitioner Garcia] was driving his Toyota Tundra truck on the day in question. [Petitioner Garcia] stopped the vehicle near where Wass was sitting, and [Petitioner] and an unidentified third-party exited the vehicle. An argument ensued. The argument escalated and the unidentified individual shot Wass several times with a .45 Glock firearm. [Petitioner Garcia] and the unidentified

---

[1] Petitioner has paid the applicable filing fee for this cause (ECF No. 2) and is represented by counsel in these proceedings.

individual then left in [Petitioner Garcia]'s vehicle, with [Petitioner Garcia] in the driver's seat.

*Garcia v. State*, 486 S.W.3d 602, 604 (Tex. App.—San Antonio 2015, pet. ref'd); ECF No. 13-3 at 1.

Petitioner was indicted for Wass's murder on December 12, 2012. ECF No. 13-12 at 6 (Indictment). On August 19, 2014, a jury returned a guilty verdict pursuant to the law of parties and assessed punishment at thirty years of imprisonment. *State v. Garcia*, No. 2012-CR-10101 (175th Dist. Ct., Bexar Cnty., Tex. Aug. 19, 2014); ECF No. 13-12 at 121 (Judgment). Petitioner's conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal Appeals refused his petition for discretionary review on July 27, 2016. *Garcia v. State*, No. 0308-16 (Tex. Crim. App.); ECF No. 13-11. Petitioner admits he has not filed a state habeas corpus application challenging the constitutionality of his conviction and sentence. ECF No. 1 at 3.[2]

Instead, Petitioner filed the instant petition for federal habeas corpus relief on October 24, 2017. ECF No. 1. In the petition, Petitioner raised two grounds for relief: (1) the evidence was legally insufficient to support a conviction for murder under the law of parties and (2) the trial court committed jury-charge error by failing to instruct the jury that each of the two murder application paragraphs should be considered in tandem with its own law of parties instruction. On February 12, 2018, Petitioner filed a Memorandum in Support wherein he provided supplemental briefing on the insufficient evidence claim and waived his second claim alleging jury-charge error. ECF No. 7 at 2, n2. The Director, relying exclusively on the state court's adjudication of the sufficiency claim on direct appeal, argues federal habeas relief is precluded under the AEDPA's deferential standard. ECF No. 15.

---

[2]  *See also* http://www.search.txcourts.gov, search for "Garcia, [Petitioner]" last visited October 31, 2018.

**Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's

determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## Analysis

Petitioner contends the State failed to present legally sufficient evidence to support a conviction for murder under the law of parties. Specifically, Petitioner contends the evidence was insufficient to establish he (1) intended to kill the victim and (2) he assisted the gunman in doing so. Petitioner's allegations were rejected by the state appellate court on direct appeal and again by the Texas Court of Criminal Appeals when it refused Petitioner's PDR. As discussed below, Petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

## I.    Relevant Facts

On direct appeal, the Fourth Court of Appeals accurately summarized the evidence presented at Petitioner's trial:

> The State's case was tediously presented through the testimony of twenty witnesses and the admission of over fifty exhibits. Because most of [Petitioner Garcia]'s appellate issues revolve around the sufficiency of the State's evidence, a more detailed version of the testimony is provided below.
>
> ### A.    Responding Officers
>
> San Antonio Police Officer Jose Rojas responded to an emergency signal and a report of shots fired. By the time he arrived at the scene, the victim, Samuel Wass, was being attended to by emergency personnel. Officer Rojas was able to

identify five witnesses: Jennifer Guzman, Bernabe Robledo Jr., Marissa Casanova, Sally Garcia, and Domingo Perales.

During the officer's attempts to identify the individuals involved in the shooting, several witnesses identified [Petitioner Garcia] as the driver of the vehicle and an unidentified individual as the passenger and shooter. [Petitioner Garcia] was described as wearing a red shirt, dark hair, medium-skin tone, and smaller than the passenger. The passenger, and the shooter, was unknown to the witnesses. The witnesses described the passenger as heavy-set with a goatee, medium complexion, and wearing a white, polo shirt with stripes. The witnesses were also able to describe the vehicle being driven by [Petitioner Garcia] as a silver-gray Toyota Tundra and to provide a license plate.

San Antonio Police Officer Faras Khalaf arrived shortly after the shooting. He observed Guzman providing medical attention to Wass. Officer Khalaf further relayed hearing Marissa Casanova scream, "It was Simon. It was Simon." Marissa did not, however, provide the officer with a last name. Finally, Officer Khalaf's investigation also supported the vehicle contained two individuals, but only the passenger was shooting.

Officer Randall Matthey, also with the San Antonio Police Department, testified the vehicle was originally identified as a silver-colored Dodge. The identification was later corrected to a silver-colored, four-door, Toyota Tundra with a matching hard cover.

**B.    The Eye-Witnesses**

The State called several witnesses that either witnessed the shooting or arrived shortly thereafter.

   *1.    Bernabe Robledo Jr.*

The State's first lay witness was Bernabe Robledo Jr. At the time of the shooting, Robledo, an insurance adjuster, was sitting in his vehicle writing an estimate for Domingo Perales. Robles [sic] testified a red Honda Civic pulled in behind him and, while the female exited the vehicle and entered the residence, the male stayed in the vehicle. Robledo testified that, shortly thereafter, a silver truck pulled up and the two individuals in the truck were arguing with the male in the Honda. Robledo described two Hispanic men exiting the truck; the shorter one from the driver's side and the bigger one from the passenger door.

As the arguing continued, Robledo saw the driver yelling at the Honda passenger. Robledo was trying to mind his own business and finish the estimate when he heard shots fired. When he looked up, Robledo identified the bigger guy as the shooter and further testified he saw a black .45 Glock in the passenger's hand. Robledo heard the shooter say something akin to, "I told you not to do that shit and I told you," before firing several more times at the victim. When the victim "rolled out of the car," Robledo testified the passenger shot him again as

5

the victim tried to duck behind the car towards the curb. When questioned, Robledo believed he heard a total of seven or eight gunshots.

Robledo further testified he heard the victim say, "they are shooting at me, they are shooting at me," followed by, "They shot me, they shot me." Robledo saw the driver pushing the passenger toward the truck and say, "let's go, let's go." As the two men drove off, Robledo was able to write down the license plate, make, and model of the truck.

Robledo did not know any of the individuals involved in the shooting. Although he was able to provide the officers with a description of each, when asked to identify the driver from a photo array, Robledo could only limit his identification to two of the individuals shown. Yet, during trial, over defense counsel's objection, Robledo identified [Petitioner Garcia] as "the smaller gentleman" and the driver of the silver Toyota Tundra.

### 2. *Marissa Casanova*

Marissa testified Wass was her on-again, off-again boyfriend for approximately three years and the father of her youngest child. Additionally, her sister, Sally Ann, was married to [Petitioner Garcia]'s brother, Albert Garcia Jr. Marissa relayed that she picked up Wass earlier in the evening in her sister's red Honda Civic and drove back to her father's house. Marissa conceded she was with Wass the evening before when Wass smoked marijuana and ingested methamphetamines. Marissa's father, Domingo Perales, did not like Wass; thus, when they arrived at the house, Wass waited in the car while Marissa went inside to get her sister, Sally Ann. Marissa further explained that she had known the Garcia family, including Albert and [Petitioner Garcia], her entire life. They had lived down the street and grown up together.

While Marissa was in the residence, she heard five shots fired and then a "loud truck" drive away. She testified she immediately recognized the vehicle as "Simon's truck," the Toyota Tundra she often heard speeding through the neighborhood. When she ran outside, she saw Wass walking toward her, he stumbled, and then collapsed on the ground. When she asked "who did this," Marissa testified Wass "mouthed" it was [Petitioner Garcia].

### 3. *Domingo Perales*

The State also called Domingo Perales to testify. Perales had known and lived on the same street as the Garcia family for over thirty years and had known [Petitioner Garcia] since he was born. He also testified his daughter, Sally Ann, was married to [Petitioner Garcia]'s brother, Albert Garcia Jr. Perales testified that he was on his doorstep, with his back to the street, when he heard the shots. When Perales moved to where he could see what happened, he saw [Petitioner Garcia] get into his Toyota Tundra and speed away. Perales further testified that

he heard a second person get into the truck, but he could not see the passenger door or the other individual.

   4.  *Albert Garcia Sr.*

Albert Garcia Sr., [Petitioner Garcia]'s father, was also called to testify. Mr. Garcia was in his residence when he heard the shots fired. As he walked out the front door, he saw [Petitioner Garcia] driving by in his Toyota Tundra truck. Mr. Garcia, the only individual that could identify the passenger, testified he only knew the passenger as "Robert." Although he did not know Robert's last name, he testified that Robert and [Petitioner Garcia] had been together earlier in the day helping with the family snow-cone business.

   5.  *Jennifer Guzman*

The final lay-witness was Jennifer Guzman. Guzman, a cardiac sonographer, was on her way home when she saw two men arguing. As she looked down to put her car into gear, Guzman reported hearing several gunshots. When she looked up, she saw [Petitioner Garcia] run around the driver's side of the truck, but the truck took off quickly and she could only describe a "big arm" with a black gun outside of the passenger's side.

Guzman was the first to administer first aid to Wass. She remembered asking him "who shot you" and "who were you arguing with" and Wass responding, "Simon." But when questioned, Guzman acknowledged the questions were asked in succession and Wass could have been answering either question.

**C.**  **Previous Exchange between [Petitioner] and Wass**

The State elicited testimony from several witnesses regarding previous altercations between [Petitioner Garcia] and Wass. The State also called two additional officers regarding a stolen vehicle in October of 2011, approximately six months before the shooting. San Antonio Police Officer Connell testified that [Petitioner Garcia] made a stolen vehicle report on a silver Toyota Tundra registered to his father, Albert Garcia Sr. [Petitioner Garcia] reported that Wass stole the vehicle for the "twenty-eight inch rims." A second officer testified the vehicle was later recovered with extensive damage to the vehicle.

Marissa also described several incidents between Wass and [Petitioner Garcia]. One incident involved her son playing outside with [Petitioner Garcia]. When she and Wass walked up, [Petitioner] commented that Wass was not the child's father. Under rigorous questioning, Marissa conceded Wass and [Petitioner Garcia] exchanged "fighting words" and [Petitioner Garcia] "stated something about 'I'll get you one day,' or 'I'll be back to get you' or something." The State also refreshed Marissa's memory with her previous statement and Marissa was forced to acknowledge telling the officers that shortly before Christmas, approximately three months prior to the shooting, [Petitioner Garcia]

7

warned Wass, "Just wait, motherfucker, I'm going to get you." Marissa explained that Wass simply replied, "Whatever."

*Garcia*, 486 S.W.3d at 604-607; ECF No. 13-3 at 2-6.

## II. Reviewing Sufficiency Claims Under AEDPA

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Supreme Court enunciated the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding. The Court stated the issue to be "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. In applying this standard, the Court went on to say that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, all credibility choices and conflicts in inferences are to be resolved in favor of the verdict. *United States v. Resio-Trejo,* 45 F.3d 907, 911 (5th Cir. 1995); *United States v. Nguyen,* 28 F.3d 477, 480 (5th Cir. 1994).

In addition, AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court has explained:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

8

### III. Application of the *Jackson* Standard

Petitioner raised his insufficient evidence claim during his direct appeal proceedings, but the Texas Court of Criminal Appeals refused Petitioner's PDR without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018). In other words, the Court must look to the last reasoned state judgment that considered and rejected Petitioner's insufficient evidence claim when reviewing the claim under the doubly deferential standard set forth in *Jackson*. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals, which set forth the elements of the offense and concluded that there was sufficient evidence to support Petitioner's murder conviction under the Texas law of parties:

> A person commits the offense of murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1) (West 2011). To convict [Petitioner] under the law of parties, the jury had to determine that [Petitioner] was criminally responsible for the acts of another. *See* Tex. Penal Code Ann. § 7.01(a) (West 2011); *see also Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id*. Section 7.02(a)(2) of the penal code provides that a "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2).
>
> Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). The jury was entitled to consider the events that took place before, during, and after the commission of the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). "There must be sufficient evidence of an understanding and common design to commit the offense." *Gross*, 380 S.W.3d at

186 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties." *Id*. (citing *Guevara*, 152 S.W.3d at 49). Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *accord Gross*, 380 S.W.3d at 186. Additionally, allegations that a party is guilty under the law of parties need not be specifically pled in the indictment. *Barrera v. State*, 321 S.W.3d 137, 144 n. 1 (Tex. App.–San Antonio 2010, pet. ref'd).

### 1. *Gross v. State*

[Petitioner Garcia] relies on *Gross v. State*, 380 S.W.3d 181 (Tex. Crim. App. 2012), for support that the evidence is insufficient to support his conviction. Gross was convicted under the law of parties for the murder of Corkney Lee. *Id*. at 183. The testimony at trial was that Gross and Lee, who were in different cars, began arguing and Lee asked Gross to pull over. Both men exited their vehicles and continued to exchange words. *Id*. Approximately one minute later, Gross's co-defendant exited Gross's vehicle with a shotgun pointed at both Gross and Lee. Testimony further evidenced Gross yelled for his co-defendant to stop shooting. Although the gun was stored in Gross's vehicle, it did not belong to Gross. As Lee ran, Gross testified he heard shots, he panicked, and drove away with his co-defendant and the gun.

The Court of Criminal Appeals reiterated that the jury was permitted to draw reasonable inferences, but may not "draw conclusions on speculation." *Id*. at 188 (citing *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)). The court pointed out that Lee and his passenger started the altercation, not Gross. There was no testimony that Gross knew Lee or his passenger prior to the evening of the shooting, much less evidence of any previous disagreements between the two. Additionally, the record was void of evidence suggesting Gross "continued the verbal altercation outside the vehicle in order to distract Lee and give [Gross's co-defendant] the opportunity to load the weapon unnoticed." *Id*. at 187. Although the State argued Gross and his co-defendant decided to kill Lee as they were pulling over, the record did not support such a conclusion. *Id*. The court concluded that Gross's conviction was based on mere speculation; and, therefore, the evidence did not substantiate his guilt. *Id*.

### 2. *Testimony Elicited during [Petitioner Garcia]'s Trial*

Each of the eye-witnesses pointed to [Petitioner Garcia] as being the driver of the vehicle. Domingo Perales, who had known [Petitioner Garcia] his entire life, and [Petitioner Garcia]'s own father, identified [Petitioner Garcia] as driving away from the scene shortly after the shooting. Robledo, the insurance

10

adjuster who did not know any of the individuals involved, identified [Petitioner Garcia] as the driver and as the individual fighting with Wass immediately prior to the shooting. Robledo also identified [Petitioner Garcia] as telling the shooter it was time to leave. Additionally, both Marissa and Guzman, the woman that stopped to administer first aid, reported that Wass identified [Petitioner Garcia] as the responsible person. The jury also heard testimony regarding [Petitioner Garcia]'s and Wass's extensive history, including allegations that Wass had stolen [Petitioner Garcia]'s truck six months before the shooting.

### 3.   Analysis

The *Gross* case is clearly distinguishable. Here, [Petitioner Garcia] had known Wass for years and they had a long and acrimonious history. There were numerous altercations between the two individuals and several statements by [Petitioner Garcia] that he was "going to get [Wass] someday."

The testimony was also replete with examples of [Petitioner Garcia]'s involvement in the offense. [Petitioner Garcia] drove the vehicle and stopped beside the vehicle in which Wass was sitting. Unlike *Gross*, where the victim started the altercation, Wass's vehicle was stopped; [Petitioner Garcia] [sic] elected to stop his truck, exit the truck, walk around to Wass's vehicle, and partake in a verbal altercation. Wass further identified [Petitioner Garcia], and not the passenger, as the responsible party. [Petitioner Garcia] started the verbal altercation, and by all accounts, [Petitioner Garcia] directed the shooter when it was time to leave. Unlike *Gross*, [Petitioner Garcia] was not merely present at the scene of the crime and there was no evidence [Petitioner Garcia] attempted to stop the shooter or that he appeared surprised by the shooting. *Cf. Id.* at 187. [Petitioner Garcia], not the co-defendant, had the history with Wass and [Petitioner Garcia] had the motive to harm or "get even" with Wass, and he drove the vehicle away from the scene.

The jury alone is charged with resolving conflicts in the testimony; and, as the sole judge of the witness credibility, the jury was entitled to believe or disbelieve all or part of the testimony for any witness. [*Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)]. The jury was entitled to make all reasonable inferences from the evidence that, although [Petitioner Garcia] did not pull the trigger, he "solicit[ed], encourage[ed], direct[ed], aid[ed], or attempt[ed] to aid" a third party to commit the offense. *See* Tex. Penal Code Ann. § 7.02(a)(2). The testimony reasonably supports [Petitioner]'s involvement in the shooting—before, during, and after. *See* [*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)]. Thus, viewing the evidence in the light most favorable to the verdict, we cannot say the evidence is legally insufficient to support the jury's determination that [Petitioner Garcia] acted with intent to promote or assist a third party to murder Wass. *See* [*Vodochodsky v. State*, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005)].

> Accordingly, [Petitioner Garcia]'s appellate issue alleging insufficiency of the evidence to substantiate his guilt under the law of parties is overruled. *See* [*Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009)]; *Brooks*, 323 S.W.3d at 899.

*Garcia*, 486 S.W.3d at 612-15; ECF No. 13-3 at 14-18.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. A state appellate court's determination is entitled to great deference when, as was done here, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). Moreover, this Court has independently reviewed the record and finds the evidence sufficient to support the verdict. Thus, viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under *Jackson*. Federal habeas relief is therefore denied.

## **Certificate of Appealability**

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

### Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claim on the merits during his direct appeal proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and appellate proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Simon Rene Garcia's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this 16th day of November, 2018.

_____

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE